## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

**V.**                                    **CRIMINAL ACTION NO. 1:13-CR-89-KS-MTP**

**WILLIAM WALKER, et al.**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** the Petition to Authorize Release of Records [62].

### I. BACKGROUND

In late 2012, Gulf Publishing Company, Inc. on behalf of the Sun Herald newspaper, made public records requests of the Mississippi Department of Marine Resources ("DMR") under the Mississippi Public Records Act of 1983.[1] In early January 2013, the DMR records were subpoenaed by the Harrison County Grand Jury and placed into the custody of the Mississippi Department of Audit ("MDA"). Petitioners – MDA and the State Auditor – represented in briefing that they were participating in a joint public corruption investigation coordinated by the United States Department of Justice.

On January 16, 2013, the Sun Herald filed suit in the Chancery Court of Harrison County, Mississippi, to compel disclosure of the documents. A trial was held on October 30-31, 2013. The Chancery Court provided a bench ruling that the

---

[1] MISS. CODE ANN. §§ 25-61-1, *et seq.*

documents in question were not exempt from the Public Records Act. It ordered the State Auditor to return the records to DMR and ordered DMR to then comply with the Sun Herald's public records request.

On November 4, 2013, this Court's Clerk issued a subpoena at the request of the United States Attorney's office, ordering the State Auditor to deliver the DMR records to the federal grand jury in Jackson, Mississippi, by 9:00 a.m. on November 5, 2013. A representative of the Attorney General for the State of Mississippi notified the Chancery Court of the subpoena after 5:00 p.m. on November 4, 2013. Later that night, the Chancery Court entered an order directing the State Auditor to deliver the DMR records to the Chancery Court by 9:00 a.m. on November 5, 2013. The next morning, the Attorney General's office notified the Chancery Court that the documents had already been taken to the federal grand jury. Proceedings to hold the State Auditor in contempt are ongoing in the Chancery Court.

On December 5, 2013, the State Auditor filed a Motion to Authorize the Release of Records [62], seeking this Court's permission to disclose the DMR records subject to the federal grand jury subpoena. The Court held a teleconference on December 6, 2013, and counsel for the United States, the Defendants, the State Auditor, and the Sun Herald participated. The Court provided the interested parties with broad direction as to the issues that could be relevant to the motion, and it set a deadline for briefing.

Only the State Auditor and the United States filed briefs. Predictably, the United States opposed disclosure of the records. Counsel for Defendants William Walker, Scott Walker, and Sheila Shumate all notified the Court via e-mail that their

clients adopted the Government's position. Defendant Zeigler's counsel stated during the Court's teleconference that Zeigler had no position on the issue.

## II. DISCUSSION

The relevant sections of Rule 6(e) provide:

(2)    *Secrecy*.

    (A)    No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).

    (B)    Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

* * *

    (vii)    a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

(3)    *Exceptions*.

* * *

    (E)    The court may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand-jury matter:

    (i)    preliminarily to or in connection with a judicial proceeding . . . .

FED. R. CRIM. P. 6(e)(2)-(3).

"Maintaining the confidentiality of grand jury proceedings protects several important interests of the government and of private citizens." *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 213 (5th Cir. 1980). It prevents persons under investigation from learning of a possible indictment. *Id.* It protects grand jurors from tampering or intimidation, allowing them to fully investigate suspected crimes without inhibition. *Id.* It promotes the full cooperation of witnesses by preventing retaliation,

3

and it avoids injury to the reputation of those whom the grand jury chooses not to indict. *Id.*

### A.      *"Matter Occurring Before the Grand Jury"*

The first question the Court must answer is whether the DMR records are a "matter occurring before the grand jury" within the scope of Rule 6(e)'s secrecy requirement. *See* FED. R. CRIM. P. 6(e)(2)(B). "Courts have interpreted the secrecy requirement imposed by Rule 6(e) to apply not only to information drawn from transcripts of grand jury proceedings, but also to anything which may tend to reveal what transpired before the grand jury." *Lance*, 610 F.2d at 216. The Fifth Circuit construes the "secrecy provisions of Rule 6(e) to apply not only to disclosures of events which have already occurred before the grand jury, such as a witness's testimony, but also to disclosures of matters which will occur, such as statements which reveal the identity of persons who will be called to testify or which report when the grand jury will return an indictment." *Id.* at 216-17. Wright and Miller provide a similarly expansive definition:

> Those covered by Rule 6(e) are prohibited from disclosing "a matter occurring before the grand jury," a phrase not defined in the Rule. Although one court has said that the meaning of this phrase "depends entirely upon a fact-specific inquiry and the district court's judgment," some generalizations are possible. Thus, the nature and direction of the grand jury's investigation, the types of crimes being examined, the identity of the target and subjects of the investigation, the names of the witnesses, and the documents, testimony and other evidence being presented are all covered by the secrecy rule.

1 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 106 (4th ed. 2013); *see also* 24 *Moore's Federal Practice,* § 606.06 (Matthew Bender 3d ed. 2013).

The United States represents that these documents are part of an ongoing grand jury investigation. But the record contains no indication that they were presented to the grand jury before the indictments were issued November 5, 2013. In fact, the United States first subpoenaed the documents on November 4, 2013. Furthermore, the United States conspicuously failed to represent that the documents would be presented to the grand jury at some point in the future. The government's position appears to be that the DMR records are part of a grand jury proceeding because they were obtained by a grand jury subpoena, without regard for their actual role, if any, in the grand jury proceeding.

The government admitted in briefing that "Rule 6(e) does not apply to material obtained or created independently of the grand jury as long as the disclosure of such material does not reveal what transpired before or at the direction of the grand jury." Government's Response to Petition to Authorize Release of Records at 4, *United States v. Walker*, No. 1:13-CR-89-KS-MTP (S.D. Miss. Dec. 18, 2013), ECF No. 65 (citing *Lance*, 610 F.2d at 217). Indeed, "some types of materials possessed by the grand jury might be disclosable without tending to compromise the grand jury's need for secrecy. Principal among these are documents, particularly business records, subpoenaed by the grand jury." 24 *Moore's Federal Practice*, § 606.06 (Matthew Bender 3d ed. 2013). The Fifth Circuit has echoed this sentiment: "[T]he disclosure of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation, does not violate Rule 6(e)." *Lance*, 610 F.2d at 217.

In summary, the Government subpoenaed the DMR records only one day before

5

the indictments issued, and the Government has not represented that the records have been or will be presented to the grand jury. *See Phillips v. United States*, 843 F.2d 438, 441 (11th Cir. 1988) ("matters occurring before a grand jury" includes anything that will reveal what transpired during grand jury proceedings; documents never seen by grand jury were not subject to secrecy requirement). Additionally, the documents are public records created by DMR and obtained by the State Auditor independent of the grand jury proceedings. *Lance*, 610 F.2d at 217. The record contains no indication that disclosure would endanger the secrecy of the grand jury, which is the substantive purpose of Rule 6(e)(2). Therefore, based on the information currently before the Court, the DMR records are not a "matter occurring before the grand jury," and they are not subject to Rule 6(e)'s secrecy requirement.

**B.    *Authorization of Disclosure***

Even if the documents were "matters occurring before the grand jury," the Court could still authorize their disclosure pursuant to Rule 6(e)(3)(E), which allows the Court to "authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding . . . ." FED. R. CRIM. P. 6(e)(3)(E)(i). "[U]pon a showing of 'particularized need' and 'compelling necessity' disclosure may be permitted." *In re Disclosure of Evidence Taken before Special Grand Jury*, 650 F.2d 599, 601 (5th Cir. 1981). The Court has "substantial discretion" in determining whether grand jury materials may be disclosed. *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979).

6

1.    *"In Connection with a Judicial Proceeding"*

First, the Court must determine whether the State Auditor seeks the DMR records "preliminarily to or in connection with a judicial proceeding." "The term 'judicial proceeding' in Rule 6(e) includes any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime." *In re J. Ray McDermott & Co.*, 622 F.2d 166, 170 (5th Cir. 1980) (quoting *Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958) (Judge Hand)).

The State Auditor seeks disclosure of the DMR records in connection with the proceedings before the Chancery Court – a dispute that falls within the scope of the definition cited above. The Sun Herald's public records suit is a proceeding determinable by a court, with the object of forcing the State Auditor's office and DMR to comply with Mississippi's Public Records Act, subject to judicial control, with standards imposed upon the parties' conduct in the public interest.

2.    *Particularized Need*

The Supreme Court provided the following summary of the "particularized need" test: "Parties seeking grand jury [materials] under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222, 99 S. Ct. 1667. "[I]n considering the effects of disclosure on grand jury

proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effects upon the functioning of future grand juries." *Id.* Therefore, "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the . . . party seeking disclosure." *Id.* But "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury [materials] will have a lesser burden in showing justification." *Id.*

### a.    Avoidance of a Possible Injustice

The Government argues that Petitioners have not shown a particularized need to turn the DMR documents over to a newspaper – framing the argument as if the Chancery Court were not even involved. Petitioners' particularized need, though, has less to do with the Sun Herald than it does with the Chancery Court, Mississippi public policy, and the rule of law. If the Court does not permit the State Auditor to disclose the DMR records, he will be unable to comply with the Chancery Court's well-reasoned, valid order without subjecting himself to charges of contempt in this Court. FED. R. CRIM P. 6(e)(7). If he continues to abide by Rule 6's secrecy requirement, the Chancery Court's order will remain unenforced, and the public records at issue will remain hidden from public scrutiny – nullifying the lawful authority of the Chancery Court and the Mississippi legislature which passed the Public Records Act. By any measurement, this result would be unjust.

"The intent of the legislature in enacting the Mississippi Public Records Act of 1983" was to provide "any person . . . the right to inspect, copy or mechanically

reproduce or obtain a reproduction of any public record of a public body in accordance with reasonable written procedures . . . ." *Roberts v. Miss. Republican Party State Exec. Comm.*, 465 So. 2d 1050, 1053 (Miss. 1985). Mississippi's courts liberally construct the statute, and "[a]ny doubt must be resolved in favor of disclosure." *Miss. Dep't of Wildlife v. Miss. Wildlife Enforcement Officers' Assoc., Inc.*, 740 So. 2d 925, 935 (Miss. 1999). The Chancery Court ruled that the DMR records were not exempt from the Public Records Act. If the State Auditor is not permitted to comply with the Chancery Court's order, a substantial goal of Mississippi public policy will be thwarted – a public policy generally shared by the federal government.[2] The Court finds, therefore, that the Auditor's request meets the first element of the *Douglas Oil* test – the avoidance of a possible injustice.

### b.   Balancing Competing Needs

Nevertheless, "the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings." *Butterworth v. Smith*, 494 U.S. 624, 630, 110 S. Ct. 1376, 108 L. Ed. 2d 572 (1990). Rule 6's secrecy requirement protects a number of public interests, *see Lance*, 610 F.2d at 213, but "the invocation of grand jury interests is not some talisman that dissolves all" competing needs. *Butterworth*, 494

---

[2]*Cf. Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 104, 99 S. Ct. 2667, 61 L. Ed. 2d 399 (1979) ("A free press cannot be made to rely solely upon the sufferance of government to supply it with information."); *In re Express-News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982) ("The first amendment's broad shield . . . is not limited to the right to talk and to print. The value of those rights would be circumscribed were those who wish to disseminate information denied access to it, for freedom to speak is of little value if there is nothing to say.").

U.S. at 630, 110 S. Ct. 1376. If a grand jury subpoena always shielded otherwise public records from dissemination, the First Amendment guarantees of free speech and a free press would be significantly curtailed. Therefore, "the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards" provided by relevant case law. *Douglas Oil*, 441 U.S. at 223, 99 S. Ct. 1667.

Many of the public interests in maintaining the secrecy of grand jury proceedings are irrelevant in this case. Indictments have already been issued, and this matter has been publicized throughout state media for months. There is little danger of tipping off potential targets to the possibility of indictment. In light of what has already been reported, any rational person involved in corrupt activities at DMR should expect to be the target of investigation.

Also, disclosure of the documents would not reveal the identity of grand jurors, grand jury witnesses, or those whom the grand jury investigated but chose not to indict. The documents are public records created by DMR. They contain no information about the grand jury's deliberative process, the direction of its investigation, the witnesses and other evidence it considered, or the identity of its members. In fact, as discussed above, there is no indication in the record that the DMR records actually have been or will be considered by the grand jury.

The Government argues that publication of the DMR records – which is likely to happen if the Court permits the State Auditor to comply with the Chancery Court's order – could negatively affect the trial in this matter. The Government contends that

increased publicity could taint the jury pool, depriving Defendants of the right to a fair trial. This issue also concerns the Court, but the Chancery Court case and alleged activities of individuals at DMR have already been the subject of numerous reports in print, electronic, and broadcast media over the past several months. The disclosure of a federal investigation and indictments only increased the scrutiny. In light of the publicity already received by this case, inspection and publication of the DMR records by the press would have negligible impact.[3] Regardless, denying the present motion would receive just as much publicity as granting it, and all parties will have a reasonable opportunity to question potential jurors during voir dire.

Finally, the Court notes that the Government has had access to the documents for well over a month, and Defendants had access to them for at least a week prior to the expiration of their briefing deadline. If the DMR records contain matters which should be shielded from the public, the Court could have inspected them *in camera* to determine whether such concerns had any merit. Neither the Government nor Defendants requested that the Court do so.

In summary, most of the reasons for maintaining grand jury secrecy are irrelevant here. The DMR records would not reveal anything about the internal operations of the grand jury, and it is already public knowledge that the DMR is under federal investigation. Voir dire will provide the parties and Court an opportunity to

---

[3]To be clear, nothing in this opinion should be construed as a holding that the Defendants' right to a fair trial has been compromised by the publicity already received by this case.

screen potential jurors, mitigating any potential threat to the Defendants' right to a fair trial. Accordingly, the Court finds that the need for the DMR records to remain secret is outweighed by the State Auditor's need to comply with the Chancery Court's order, the Chancery Court's obligation to enforce Mississippi's Public Records Act, and the principle of comity.

### c.   Scope of the Request

Finally, the Court must consider whether the request for disclosure "is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222, 99 S. Ct. 1667. According to the Government, the DMR records comprise approximately sixty boxes of documents. The Chancery Court held that all of the documents were public records and ordered the State Auditor to produce them for inspection. Therefore, the State Auditor's request to release all of the documents is structured to cover only the material needed to comply with the Chancery Court's order.

### 3.   *Summary*

For all of the reasons stated above, the Court finds that even if the DMR records were "matters occurring before the grand jury" and subject to Rule 6(e)'s secrecy requirement, it would be appropriate to permit disclosure here. Petitioners seek disclosure in connection with a judicial proceeding, and they have demonstrated that disclosure is necessary to avoid potential injustice, that the need for disclosure outweighs the need for secrecy, and that their request is structured to cover only the material necessary for compliance with the Chancery Court's order.

## III. CONCLUSION

For all of the reasons stated above, the Court **grants** the Petition to Authorize Release of Records [62]. The Court orders the United States Attorney's Office to release all of the documents identified in the attachment to the grand jury subpoena of November 4, 2013,[4] to Petitioners within ten days of the entry of this order. The Court releases Petitioners from Rule 6's grand jury secrecy requirement with respect to the subject documents. Nothing in this opinion should be construed as supplanting, abrogating, or otherwise modifying the relevant rulings of the Chancery Court of Harrison County, Mississippi.

SO ORDERED AND ADJUDGED this, the 20th day of December, 2013.

_____/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE

---

[4]The subpoena and attachment can be found at pp. 55-57 of Exhibit "A" [66-1] to Petitioners' brief.